UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| GEORGE PAYNE, JR., <br><br> Plaintiff, <br><br> v. <br><br> INDIANA DEPARTMENT OF CORRECTIONS, <br><br> Defendants. | CASE NO. 3:23-CV-00909-CCB-SJF |

**OPINION and ORDER**

Pending and ripe before the Court are the following two motions: (1) a Motion to Compel filed by Plaintiff George Payne, Jr., and (2) a Motion to Maintain Under Seal Exhibit Filed at Dkt. 46 by Defendant Indiana Department of Correction ("IDOC"). For the reasons discussed below, Mr. Payne's Motion to Compel will be denied, and IDOC's Motion to Seal will be granted.

**I.    RELEVANT BACKGROUND**

George Payne, Jr. began working for IDOC in 1991, starting out as a Correctional Officer at the Indiana State Prison. He has worked continuously for IDOC since that time, although in different positions. [DE 12 at 2, ¶ 12; DE 44-2 at 2]. In October 2019, he began working as Deputy Warden of Re-Entry at the Miami Correctional Facility ("MCF") in Bunker Hill, Indiana. [*Id.* at 3, ¶ 12; DE 44-2 at 2]. In this role, Mr. Payne was responsible for overseeing re-entry programs, and he reported to both the Warden, William Hyatte ("Warden Hyatte"), and to IDOC's Executive Director of the Southern

Region, Richard Brown. [*Id.* at 3, ¶ 14]. His counterpart was Jaqueline Scaife, who became the Deputy Warden of Operations at MCF in 2021. [*Id.* at 3, ¶¶ 15, 16; DE 44-2 at 4]. In her role, Ms. Scaife was responsible for the safety of staff and inmates. [*Id.*].

In July 2022, Warden Hyatte took leave time, and in his absence, Ms. Scaife served as the acting Warden of MCF. While Warden Hyatte was out, two offender-on-offender homicides and one offender-on-offender assault occurred at MCF, prompting an internal investigation. [DE 12 at 3, ¶ 17]. While the investigation was pending, Director Brown advised Mr. Payne, Ms. Scaife, and Warden Hyatte that they could each choose "to be reassigned to another facility or use vacation time." [*Id.* at 4, ¶ 18]. Each chose to use vacation time. [*Id.*]. While Mr. Payne was using his vacation time, his job was posted on the Indiana State Job Bank and Indeed.com. [*Id.* at 4, ¶ 19].

After the investigation concluded, Mr. Payne met with Director Brown and Indiana State Personnel Director Laura Twyman. During the meeting, Mr. Payne was informed that he was being demoted to the position of Correctional Officer and was being reassigned to Construction Services at the Westville Correctional Facility. [DE 12 at 4, ¶ 20]. Mr. Payne's annual salary was thus reduced by approximately $20,000. [*Id.*].

Mr. Payne then sued IDOC and IDOC Commissioner Christina Reagle in her individual capacity[1]. In his three-count operative amended complaint, Mr. Payne alleges that IDOC's actions taken in response to the July 2022 incidents were due to race and sex discrimination. [DE 12 at 6]. Mr. Payne alleges that he was only offered the

---

[1] Mr. Payne later moved to dismiss his Fourteenth Amendment due process claim against Commissioner Reagle [DE 40], which the Court granted on January 13, 2025. [*See* DE 50].

abovementioned demotion, and Warden Hyatte was forced to resign in lieu of termination or some other disciplinary action. But Mr. Payne's deputy warden counterpart, Ms. Scaife, did not receive any disciplinary action—she was not demoted, nor was she subjected to a decrease in pay. [*Id.* at 5, ¶ 22]. Mr. Payne contends the differing consequences were due to his race and sex, as both he and Warden Hyatte are white men, while Ms. Scaife is an African American female. [*Id.* at 2, ¶ 11; 3, ¶ 14, 15].

The Court entered its Rule 16(b) Scheduling Order on April 8, 2024, setting deadlines for non-expert discovery, liability discovery, and retained experts. [*See* DE 22, *as amended by* DEs 42, 49, 50, 53, and 55]. Consistent with that order, Mr. Payne served Requests for Production of Documents and Interrogatories on IDOC on May 3, 2024. In these requests Mr. Payne sought, among other things, the following items:

> RFP 3. All documents, letters, notes, memoranda, emails, text messages, instant electronic messages, correspondence, electronic media, social media posts, writings, audio and video recordings, and records of communications and/or exchanges, including, but not limited to, the communications and/or exchanges themselves, between Defendants, or anyone acting on their behalf, and any federal, state or local government agency, office, department, or representative there of concerning, regarding, reflecting or referencing the claims, allegations and/or matters contained in Plaintiff's Complaint, including any Amended Complaints, Defendants' Answer, Defendants' Affirmative Defenses, Defendants' Answers to Plaintiff's Interrogatories, Plaintiff's U.S. Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination ("Charge"), Defendants' EEOC Position Statement, and/or Plaintiff's EEOC Rebuttal Statement.

[DE 44 at 1–2; DE 44-1 at 6, ¶ 3].

> RFP 8. All documents, letters, notes, memoranda, emails, text messages, instant electronic messages, correspondence, electronic media, social media posts, writings, audio and video recordings, and records concerning, regarding, reflecting or referencing any disciplinary actions (including, but

>  not limited to, verbal and/or written reprimands or warnings, probation, demotion, counseling statements, suspension, termination, and/or resignation or retirement in lieu of termination)Defendants have taken against Plaintiff. Defendants' Response should include, but not be limited to, documents, letters, notes, memoranda, emails, text messages, instant electronic messages, correspondence, electronic media, social media posts, writings, audio and video recordings, and records relied on by Defendants in making the decision(s) to discipline Plaintiff.

[DE 44 at 2; DE 44-1 at 8, ¶ 8].

IDOC responded to Mr. Payne's discovery requests on August 8, 2024. In response to the requests, IDOC produced a privilege log indicating that it was withholding a document titled July 2022 Miami Correctional Facility Assessment ("the Assessment") based on attorney-client privilege. The Assessment had been created by IDOC personnel because of the incidents that occurred during the Warden's absence. [DE 44 at 2]. Mr. Payne disputed both IDOC's assertion of attorney-client privilege for the Assessment as well as the sufficiency of the privilege log produced by IDOC when asserting the privilege. [DE 44 3–4]. IDOC subsequently produced a redacted copy of the Assessment "for attorney's eyes only." [DE 45 at 1 ¶ 3]. In the redacted Assessment, two sections remain undisclosed: (1) Section Three, titled "Administration Issues from Legal Perspective, [Deputy General Counsel] Anna Quick" and Section Eight, "Recommendations for Current Administrative Staff." [DE 45 at 3, ¶¶ 12, 15].

Mr. Payne disputes the sufficiency of the redacted Assessment and accordingly, filed the instant Motion to Compel the Assessment in its entirety, contending that IDOC has failed to show that the redacted portions of the Assessment are privileged. [DE 43]. In support, Mr. Payne contends that the Assessment was created in anticipation of

litigation regarding the deaths/injuries to the inmates involved in the July 2022 incidents, not litigation regarding employment decisions. IDOC opposes Mr. Payne's motion, maintaining that attorney-client privilege does not distinguish whether a document is created for the litigation at hand or other potential litigation. Contemporaneous with its response to Mr. Payne's motion, IDOC filed a copy of the redacted Assessment it had produced to Mr. Payne along with a motion to maintain the filed Assessment under seal.

Both motions are ripe for ruling. The Court begins with Mr. Payne's motion to compel.

II.  **MOTION TO COMPEL**

   A.   **Standard**

Information is discoverable if it is nonprivileged, relevant to any claim or defense in the case, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). When a responding party withholds discoverable information responsive to a party's discovery requests, a motion to compel discovery is allowed. Fed. R. Civ. P. 37(a)(3)–(4). After all, "[a] responding party cannot unilaterally impose conditions upon its compliance with a discovery request." *Gray v. Faulkner*, 148 F.R.D. 220, 222 (N.D. Ind. 1992). Rather, the responding party carries the burden "to show why a particular discovery request is improper" and must do so with specificity. *Hills v. AT&T Mobility Servs., LLC*, No. 3:17-CV-556-JD-MGG, 2021 WL 3088629, *4 (N.D. Ind. July 22, 2021) (quoting *Kodish v. Oakbrook Terrace Fire Prot.*, 235 F.R.D. 447, 449–50 (N.D. Ill. 2006)).

This Court has broad discretion in deciding whether to compel discovery and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines*, Inc., 95 F.3d 492, 495-96 (7th Cir. 1996). Thus, the court "independently determine[s] the proper course of discovery based upon the arguments of the parties." *Gile*, 95 F.3d at 496.

But before a motion to compel is filed, the parties must try to resolve disputes among themselves. Accordingly, all motions to compel discovery must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Fed. R. Civ. P. 37(a)(1). This Court's local rules supplement this by requiring that:

> A party filing any discovery motion must file a separate certification that the party has conferred in good faith or attempted to confer with other affected parties in an effort to resolve the matter raised in the motion without court action. The certification must include: (1) the date, time, and place of any conference or attempted conference; and (2) the names of the parties participating in the conference.

N.D. Ind. L.R. 37-1(a). The Court may deny a motion to compel that fails to include the required certification. *See* N.D. Ind. L.R. 37-1(b).

At the outset, the Court observes that Mr. Payne did not separately file a certification as required by the Court's local rules. Procedural shortcomings can be excused if the movant "somewhat complie[d] with the purpose of Rule 37-1." *Washington v. Tovo*, No. 2:17-CV-128, 2018 WL 2126941, at *2 (N.D. Ind. May 9, 2018).

Here, Mr. Payne explains that he attempted to resolve this issue by emailing IDOC to request clarification on its rationale for not producing the Assessment. [DE 44 at 1]. Mr. Payne's email explained that he did not believe that the Assessment was protected by attorney-client privilege and requested case law stating otherwise. [*Id.*]. IDOC, in essence, replied that it disagreed with Mr. Payne and suggested that Mr. Payne share any case law in support of his request for clarification. [*Id.*]. Although this communication did result in IDOC providing Mr. Payne more information about the individuals who created the assessment as well as producing the redacted Assessment, the Court questions whether the parties' correspondence—consisting of just a few emails trading positions[2]—satisfies the conferral requirement of the federal rules. [DE 44 at 4]; *See In re FedEx Ground Package Sys., Inc.,* No. 3:05–MD–527, 2007 WL 79312, at *7 (N.D. Ind. Jan. 5, 2007) (finding that correspondence that only "recites each parties' general stance on the issue rather than any type of bartering or negotiations . . . does not represent meaningful dialogue or show an attempt at a such dialogue to satisfy Fed. R. Civ. P. 37(a)").

The meet and confer requirement is not a mere formality. Informal resolution plays an important part in the mandate to achieve a "just, speedy, and inexpensive resolution" of an action. Fed. R. Civ. P. 1. By meeting and conferring, parties are often able to "narrow the outstanding discovery issues and assist[] the Court in crafting more

---

[2] It appears that the parties may have communicated beyond the included emails, as Mr. Payne's motion explains that IDOC "eventually" produced the redacted Assessment at issue in this motion. Still, those additional conferrals were not discussed in the parties' briefing, so the Court is unable to evaluate whether their form or substance satisfies the conferral requirements.

specifically-tailored relief." *Doaks v. Safeco Ins. Co. of Am.*, No. 309-CV-367JTM, 2010 WL 3940907, at *1 (N.D. Ind. July 20, 2010), *report and recommendation adopted sub nom. Dorothy Doaks v. Safeco Ins. Co. of Am.*, No. 3:09 CV 367, 2010 WL 3940891 (N.D. Ind. Oct. 5, 2010). The importance of this principle is especially apt in this dispute. Here, as the Court will discuss more *infra*, a large part of the parties' dispute appears to stem from their conflating of the attorney-client privilege and the attorney work-product doctrine. Based on this, further conferrals may have obviated the need for the Court's intervention. The Court now addresses Mr. Payne's substantive arguments.

**B.    Discussion**

Through his motion, Mr. Payne disputes that IDOC met its burden to claim attorney-client privilege for two reasons. First, Mr. Payne maintains that IDOC failed to produce a sufficient privilege log. [DE 44 at 3]. Next, Mr. Payne contends that IDOC failed to articulate a sufficient substantive basis to support its contention that the Assessment is privileged beyond a conclusory statement and a citation to *Upjohn Co. v. United States*, 449 U.S. 383, 394-99, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). The Court address each argument in turn.

**1.    Privilege Log**

The Court begins with Mr. Payne's arguments on the sufficiency of IDOC's privilege log. Under Fed. R. Civ. P. 26(b)(5)(A), a party asserting attorney-client privilege must

> (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

"This requirement typically is met through the creation of a privilege log that 'particularly and clearly sets forth the specific grounds for asserting the privilege or protection.'" *Cunningham v. SmithKline Beecham*, 255 F.R.D. 474, 480 (N.D. Ind. 2009). Here, IDOC's privilege log provides the following information about the Assessment: the title of the document, the number of pages, a claim of attorney-client privilege, and a general description stating that the Assessment was created in anticipation of litigation and a citation to *Upjohn Co.* [DE 44-3].

Mr. Payne, relying on *Smith v. Logansport Community Sch. Corp.*, 139 F.R.D. 637, 648-649 (N.D. Ind. 1991), contends that IDOC's privilege log needed to include the following information:

> 1) a general description of the type or nature of the document; 2) a brief description of the document's subject matter; 3) the nature of privilege asserted; 4) the date on which the document was prepared; 5) the name of each person who participated in the preparation of the document; 6) the number of pages or, if the document is a recording, its length in terms of time; and 7) the name(s) of the addressee(s), if applicable.

*Id.* IDOC, however, argues that Mr. Payne has misconstrued *Smith*'s holding. IDOC argues that the *Smith* court "ordered the plaintiff to create a unique privilege log including the aforementioned seven (7) portions of information" based on the extenuating circumstances present there. [DE 45 at 2 ¶ 8]. As IDOC contends, the court in *Smith* stated, "*[i]n this case*, [plaintiff] will be directed to provide a written statement identifying all…which are being withheld under the work product doctrine." 139 F.R.D. at 648 (emphasis added). The court further ordered the plaintiff to indicate each of the 7 pieces of information for each document being withheld. *Id.* Without more from Mr.

Payne, the Court cannot find that the specific requirements dictated by the court in *Smith* are required here.

In any event, as part of the parties' conferral efforts before Mr. Payne filed the motion to compel, IDOC provided a redacted version of the Assessment to Mr. Payne's counsel. [DE 44 at 4]. The Assessment produced to Mr. Payne's counsel kept two sections redacted, though the title of those sections remained visible. [DE 46]. The redacted sections included Section Three, which is titled as both "Administration Issues from Legal Perspective" and Section Eight, "Recommendations for Current Administrative Staff." [DE 45 at 3 ¶ 12, 15; DE 45-1 at 1, ¶¶ 6-7]. The unredacted portions of the Assessment also detailed who worked on the Assessment and their job titles. [DE 46 at 3]. IDOC also conveyed that the Assessment was written because of IDOC's internal investigations and to provide counsel to IDOC. Thus, although IDOC's initial privilege log did not include all the information noted by the court in *Smith*, the parties' subsequent communications, and IDOC's later production of the redacted Assessment, provided that remaining applicable information. As a result, Mr. Payne had enough information to "assess the applicability of the privilege or protection." *Cunningham*, 255 F.R.D. at 480 (citing Federal Rule of Civil Procedure 26(b)(5)). Accordingly, the Court cannot find that IDOC failed to uphold its claim of privilege through its privilege log.

## 2. Claim of Attorney-Client Privilege

The Court next examines IDOC's claims of privilege. Mr. Payne disputes the substance of IDOC's assertion of attorney-client privilege, contending that IDOC only

invoked the privilege by cursorily asserting that the Assessment was "written in anticipation of litigation" and by citing to *Upjohn*. Mr. Payne also contends that the attorney-client privilege would not apply here because the Assessment "was created in anticipation of litigation pertaining to the deaths of the inmates, not in anticipation of Mr. Payne's claims against the facility." [DE 44 at 3]. Mr. Payne also argues that IDOC did not claim that the Assessment was protected by the work-product doctrine. [*Id.*].

As an initial matter, here, IDOC states that it is withholding the two redacted sections of the Assessment due to attorney-client privilege, but also stated that the Assessment was created "in anticipation of potential future litigation" –the standard for protection under the work-product doctrine. [DE 44 at 2]. *See Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) ("The work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case."). On the other hand, the attorney-client privilege protects confidential communications between client and attorney that were made to obtain legal assistance. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Sandra T.E.*, 600 F.3d at 621. While there can be overlap between the two, "the work product doctrine…'is distinct from . . . the attorney-client privilege.'" *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975); *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012).

The parties' arguments may have conflated the work-product doctrine and the attorney-client privilege, but IDOC only expressly claims attorney-client privilege, and as the party claiming privilege, it is their burden to assert and show that the privilege or

doctrine applies. *See Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 446 (7th Cir. 2011); *see also Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 163 (N.D. Ill. 2017) ("The party asserting the work product doctrine bears the burden of establishing that the doctrine applies to each document as to which it is asserted.") Thus, the Court only considers whether IDOC has shown that the redacted portions of the Assessment should remain protected under the attorney client privilege.

To reiterate, attorney-client privilege protects confidential communications between client and attorney that were made to obtain legal assistance. *Fisher*, 425 U.S. at 403; *Sandra T.E.*, 600 F.3d at 621. "[D]ocuments do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer." *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 326 F.R.D. 176, 180 (N.D. Ill. 2018)(quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997). Whether a communication is attorney-client privileged is based on its purpose: "whether the 'primary' or 'predominant purpose' of the communication is to render or solicit legal advice." *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 893 (N.D. Ill. 2018) (collecting cases). The privilege may also apply to communications from attorney to client. "[C]ommunications from the attorney to the client are privileged if they constitute legal advice or would reveal the substance of a client confidence—directly or indirectly." *BankDirect Cap. Fin., LLC*, 326 F.R.D. at 180 (collecting cases).

Mr. Payne disputes IDOC's assertion of privilege by contending that these portions of the Assessment are not privileged because they were created in anticipation of litigation regarding inmate deaths or injury, not in anticipation of litigation from Mr.

Payne. Mr. Payne cites no authority to support his distinction. And courts have found that the privilege extends to "legal advice of any kind." *Rehling v. City of Chi.*, 207 F.3d 1009, 1019 (7th Cir. 2000), *amended* (Apr. 4, 2000) (internal quotation and citations omitted). Thus, it appears that Mr. Payne's arguments may stem from a conflated understanding of the attorney-client privilege and work-product doctrine.[3] Without more, the Court cannot find that this argument shows that IDOC has failed to meet its burden here.

Indeed, "almost all courts have concluded that the process of drafting and editing, reflecting as it often does both requests for and provision of, legal advice, is protected by the attorney-client privilege." *BankDirect Cap. Fin.*, LLC, 326 F.R.D. at 183 (finding that communications between counsel and client were protected because they were part of drafting and revising agreements); *see also Naumoski v. Costco Wholesale Corp.*, No. 2:19-CV-491, 2020 WL 2899690, at *3 (N.D. Ind. June 3, 2020) (finding that emails drafted between an attorney and management-level employees were protected because they provided legal advice regarding the company's response to a disgruntled employee); *Sandra T.E.*, 600 F.3d at 620 (finding that the attorney-client privilege applied

---

[3] The Court believes that Mr. Payne's arguments stem from a conflation of the two doctrines because Mr. Payne's arguments are framed within the applicability of the work product doctrine. It is well settled that "[d]ocuments are not work product simply because 'litigation [is] in the air.'" *IBJ Whitehall Bank & Tr. Co. v. Cory & Assocs., Inc.*, 1999 WL 617842, at *5 (N.D. Ill. Aug. 12, 1999). "The Seventh Circuit has explained that the test for 'anticipation of litigation' is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" *Hankins v. Alpha Kappa Alpha Sorority, Inc.*, 619 F. Supp. 3d 828, 837 (N.D. Ill. 2021), quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118-19 (7th Cir. 1983). Here, the Assessment was prepared after inmate deaths at the facility, so it is reasonable to conclude that the prospective litigation would have been litigation from the inmates' estates, not the instant case.

to communications and documents generated during an investigation carried by out attorneys hired in their capacity as lawyers to provide legal assistance).

Here, in support of its production of a redacted Assessment, IDOC explains that its deputy general counsel is a licensed attorney, and she drafted Sections Three and Eight of the Assessment through her position as deputy general counsel. [DE 45]. IDOC also included an affidavit from the deputy general counsel stating that she participated in the evaluation of MCF in July 2022 and that she drafted the two redacted sections of the Assessment "to provide counsel to IDOC and in anticipation of potential future litigation." [DE 45-1]. IDOC also explains that the Assessment contains "sensitive and confidential information" regarding individuals employed at IDOC. [DE 47]. The Court therefore finds that IDOC has met its burden to show that the redacted sections are protected by attorney client privilege. IDOC has shown that its deputy general drafted these portions of the Assessment in her capacity as an attorney, that she did so to transmit legal advice and recommendations, and that it contains confidential information about IDOC. Mr. Payne did not file any reply in support of his motion to compel, so there is nothing in the record to contest IDOC's statements.

The next issue is whether the redacted Assessment produced to Mr. Payne should remain protected as "Attorneys' Eyes Only." IDOC contends that further disclosure should be denied because disclosure to Mr. Payne "while he is still employed by IDOC could lead to conflict between himself and other IDOC staff that would be detrimental to the safe and orderly management of Westville Correctional Facility." [DE 45 at 4, ¶ 22]. Mr. Payne did not file any reply in support of his motion to compel, so

nothing in the record contests IDOC's arguments. Accordingly, the Court will not order further disclosure at this time.

### III. IDOC's Motion to Seal

Through its motion to seal, IDOC requests that the entire Assessment [DE 46] be maintained under seal because "it contains sensitive and confidential information that was created by [IDOC's] attorney for her client, IDOC." [DE 47 at 1 ¶ 2]. IDOC also contends that, because Mr. Payne "is currently employed by IDOC and is colleagues with many of the individuals discussed in the Assessment, many of which are identified by name." [DE 47 at 1 ¶ 3].

Mr. Payne has not filed a response to IDOC's motion despite being afforded time to do so under N.D. Ind. L.R. 7-1(d)(3)(A). Accordingly, the Court can only treat IDOC's motion as unopposed. *See* N.D. Ind. L.R. 7-1(d)(4). The Court is usually inclined to summarily grant uncontested motions like this one. But "[d]ocuments that affect the disposition of federal litigation are presumptively open to public view." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (internal quotations omitted). On the other hand, "pretrial discovery, unlike the trial itself, is usually conducted in private." *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S. Ct. 2199, 2207, 81 L. Ed. 2d 17 (1984)). Thus, "the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the . . . court's resolution'; other materials that may have crept into the record are not subject to the presumption." *Goesel*, 738 F.3d at 833 (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002). *See also*

*City of Greenville, Ill. v. Syngenta Crop Protection, LLC*, 764 F.3d 695, 697 (7th. Cir. 2014) ("[D]ocuments that affect the disposition of federal litigation are presumptively open to public view unless a statute, rule, or privilege justifies confidentiality." (internal quotations and citations omitted)).

This case is still in the pretrial discovery phase. Thus, it is unclear whether, or to what extent, the information contained in the Assessment will underpin any subsequent judicial decision. The Court's opinion also relies primarily on the parties' briefing rather than information pulled directly from the Assessment. Accordingly, the Court concludes that the Assessment should remain under seal. With that said, this order does not preclude any party from filing a motion to unseal the documents at a later stage of litigation. Furthermore, the Court reserves its right to review the propriety of maintaining the Assessment under seal once its role in the litigation becomes more evident.

### IV.  Conclusion

For these reasons,

- Mr. Payne's Motion to Compel is **DENIED** [DE 43]; and

- IDOC's motion to seal is **GRANTED**. [DE 47]. The Court **DIRECTS** the Clerk to maintain the document filed at [DE 46] under **SEAL.**

**SO ORDERED** this 23rd of June, 2025.

s/Scott J. Frankel  
Scott J. Frankel  
United States Magistrate Judge
